UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AMOS FINANCIAL LLC | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 15-cv-13990-IT |
| | * | |
| LAW OFFICE OF CHARLES P. | * | |
| KAZARIAN, P.C. and CHARLES | * | |
| KAZARIAN, ESQ., d/b/a | * | |
| KAZARIAN LAW | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

June 2, 2016

TALWANI, D.J.

I.  Introduction

Plaintiff Amos Financial LLC ("Amos") filed this action in Massachusetts state court for enforcement of a judgment against Defendant Law Office of Charles P. Kazarian, P.C. ("Kazarian P.C.") for failing to make payment under a promissory note and against Defendant Charles Kazarian, Esq., d/b/a Kazarian Law ("Kazarian") via claims of successor liability, de facto merger, and mere continuation.  Compl. [#1-1 Ex. A].  Defendant Kazarian filed a counterclaim, alleging violations of the federal Fair Debt Collection Practices Acts and its Massachusetts equivalent.  Defs' Answer Countercl. [#22 ¶¶ 25-32].  Currently pending before the court is Plaintiff's Motion to Dismiss Counterclaim of Defendant, Charles Kazarian. [#23].

II.     Discussion

    *A.*     *Standard*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a "claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint must contain sufficient factual material "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).

    *B.*     *Alleged Facts*[1]

Kazarian alleges that he is a member of the Massachusetts Bar, and that he practiced law in the form of a professional corporation known as Charles P. Kazarian, P.C. until June 2010. Answer Countercl. [#22 ¶¶ 1-3]. Kazarian P.C. had a $100,000 revolving line of credit with Bank of New England. Id. ¶ 5. The loan was memorialized in a promissory note executed between Bank of New England and Kazarian P.C. Id. The promissory note stated that the loan was payable interest only, had a call provision, and had a provision that the principle balance be paid to zero once per year. Id. Despite the condition in the promissory note, Bank of New England never enforced the zero balance provision. Id at ¶ 6.

Bank of New England dissolved, and Shawmut Bank became its successor. Id. When it became the successor, Shawmut Bank requested that Kazarian supplement the promissory note with his personal guarantee. After Kazarian declined to provide the personal guarantee, Shawmut accepted the terms of the promissory note anyway, and continued to accept Kazarian P.C.'s monthly interest payments, and declined to enforce the zero balance provision. Id. ¶ 7.

---

[1] For the purposes of a motion to dismiss, the court accepts as true the factual allegations pleaded in Defendants' Answer and Counterclaim [#22]. Shaner v. Chase Bank USA, 587 F.3d 488, 490 (1st Cir. 2009).

Shawmut Bank also dissolved, and was taken over by Sovereign Bank. Id. at ¶ 7. Sovereign Bank requested Kazarian to personally guarantee the promissory note, but Kazarian refused. Sovereign Bank thereafter accepted Kazarian P.C.'s monthly interest payments, and also declined to enforce the zero balance provision. Id. at ¶ 8. Kazarian P.C. borrowed approximately $90,000 against the note, and while paying substantial interest payments, had not paid back any of the principal. Id. at 8.

In 2009, Sovereign Bank was taken over by Santander. Santander demanded a personal guarantee from Kazarian, and Kazarian refused. Santander thereafter turned the matter over to their in-house collection people. Id. at ¶ 10. After discussions began between Kazarian P.C. and Santander, Kazarian P.C. paid $1,000 toward the principal along with the interest payment that was currently due. Id. at ¶ 10. Kazarian P.C. and Santander continued to negotiate, but failed to formalize a new agreement, and in June of 2010, Santander swept all of the cash in Kazarian P.C.'s operating account. Id. at ¶ 13. Kazarian thereafter abandoned Kazarian P.C., and began practicing law under the name Kazarian Law.

In December of 2010, Plaintiff sent Kazarian a letter claiming that Plaintiff owned the promissory note and that Kazarian was personally responsible for the borrowing. Id. at ¶ 16. Plaintiff's employees began dunning Kazarian over the phone, calling him a deadbeat, and insisting that he personally guaranteed the promissory note. Id. at ¶ 17. Plaintiff also began a civil action against Kazarian P.C. in Suffolk Superior Civil Court. Id. at ¶ 18. On October 11, 2011, that suit was dismissed without prejudice. In April 2012, Plaintiff filed another action against Kazarian P.C. in Suffolk Superior Court. Plaintiff failed to obtain proper service on Kazarian P.C., and instead tried to serve Kazarian personally. Id. at ¶ 23. Despite faulty service, in July 2013, Plaintiff filed a default judgment against Kazarian P.C. Id. at ¶ 24.

*C.     Analysis*

Plaintiff argues that Kazarian's counterclaims should be dismissed under Fed. R. Civ. P. 12(b)(6) because they fail to state a claim for relief.  Specifically Plaintiff argues that Kazarian's counterclaims, which are based on violations of the federal Fair Debt Collection Practices Act 15 U.S.C. § 1692, and its Massachusetts equivalent, Mass. Gen. Laws. ch. 93 § 49, do not apply to business loans.  Per Plaintiff, the underlying debt that Plaintiff seeks to recover was a business loan, and as such the protections under the consumer protection statutes do not apply.  Kazarian argues that while Plaintiff's complaint alleged that the original loan was a business loan, the complaint alleges further that the loan was used for personal, family, or household purposes. Kazarian's Opp'n Mot. Dismiss Countercl. [#30 2].  According to Kazarian, because Plaintiff contends that some of the loan was used for personal matters, the debt can be characterized as a "consumer debt" for FDCPA purposes.

Kazarian's argument is unavailing.  Under the FDCPA,

> [t]he term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a (5).  The Massachusetts statute defines "debt" in the same way.  Mass. Gen. Laws. ch. 93 § 49 ("No one who is a creditor or an attorney for a creditor, or an assignee of a creditor, of a natural person present or residing in Massachusetts who has incurred a debt primarily for personal, family or household purposes shall collect or attempt to collect such debt in an unfair, deceptive or unreasonable manner.").  Under FDCPA and its Massachusetts equivalent, the nature of a loan is characterized at the time of its origination.  Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC, 698 F.3d 290, 293 (6th Cir. 2012) ("Courts

which have considered this question confirm that the relevant point of time for determining the character of the obligation is when the loan is made, rather than when collection efforts begin."); Fleet Nat. Bank v. Baker, 263 F. Supp. 2d 150, 153 (D. Mass. 2003) ("Whether a debt constitutes a 'consumer debt' of the sort covered by the FDCPA, depends on the character of the lending transaction with particular attention to the purpose for which the credit was extended."); Levites v. Chipman, 568 N.E. 2d 639, 641 (Mass. App. Ct.) ("In determining whether a loan is commercial or consumer in nature, '[w]e must examine the transaction as a whole and the purpose for which the credit was extended.'").

As alleged in Kazarian's Counterclaim [#22], the promissory note at issue in this case was a business loan, and therefore the money was not borrowed "primarily for personal, family, or household purposes." The counterclaim is devoid of any allegation suggesting the debt was incurred or credit was extended for personal purposes. Thus, according to the allegation in the counterclaim the "debt" was a commercial debt and is not subject to the FDCPA or Mass. Gen. Laws. ch. 93 § 49.[2] Moreover, Kazarian P.C. is not a "natural person" and therefore cannot be considered a "consumer" as defined by the statute. "Consumer" is defined as a "natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a (3); Mass. Gen. Laws ch. 93 § 24.

---

[2] Case law also notes that a communication sent to a debtor's home does not convert a commercial debt into an obligation under the FDCPA. Scoralo Malone & Zubatov LLP v. McCarthy, Burgess & Wolff, __ Fed. Appx. __, 2016 WL 536864, *2 (2nd Cir. Feb. 11, 2016) ("We reject this argument because it contradicts the plain language of the statute by attempting to define 'consumer debt in accordance with the actions of the debt collector, rather than the true nature of the debt.'")(quoting Slenk v. Transworld Sys., Inc., 236 F. 3d 1072, 1076 (9th Cir. 2001)); Holman v. W. Valley Collections Servs., Inc., 60 F.Supp. 2d 935, 937 (D. Minn. 1999) ("[I]f a communication to the debtor's home converted any commercial debt into an obligation under the FDCPA, it would be tantamount to an amendment of the clear intent of Congress.").

In the Opposition to the Motion To Dismiss [#30], Kazarian argues that "although not stated as a separate count, there is a counterclaim asserted under G.L. c. 93A, which should be read to state not just *per se* claims under that statute in connection with violations of the state Fair Debt Collection statute, but also generally for the inherently unfair and deceptive acts and practices specifically set forth in the Counterclaim." Id. at 3. As pled, the complaint did not put Plaintiff on notice of a separate 93A count. "A fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to afford the opposing party fair notice of the claims asserted against him and the grounds on which those claims rest." Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1171 (1st Cir.1995). The complaint lists two separate counts "COUNT I: Violations of Fair Debt Collection Practice Acts" and "Count II: Violations of Massachusetts Fair Debt Collection Practices Act." Answer Countercl. [#22]. The complaint does not give notice that Kazarian was alleging a 93A violation separate from the Fair Debt Collection Practices claims.

Even if Kazarian had separately identified such a claim, the pleading is still insufficient. To bring a claim under Mass. Gen. Laws ch. 93A Kazarian must allege "(1) that the defendant engaged in an unfair method of competition or committed an unfair or deceptive act or practice, as defined by [] ch. 93A, § 2, or the regulations promulgated thereunder; (2) a loss of money or property suffered as a result; and (3) a causal connection between the loss suffered and the defendant's unfair or deceptive method, act, or practice." Auto Flat Car Crushers, Inc. v. Hanover Ins. Co., 17 N.E.3d 1066, 1074-75 (Mass. 2014); Casavant v. Norwegian Cruise Line Ltd., 952 N.E.2d 908, 912 (Mass. 2011) ("If any person invades a consumer's legally protected interests, and if that invasion causes the consumer a loss – whether that loss be economic or noneconomic – the consumer is entitled to redress under our consumer protection statute.") (quoting Hershenow v. Enterprise Rent-A-Car Co. of Bos., Inc., 840 N.E.2d 526, 535 (2006)).

Kazarian does not allege sufficient facts that Plaintiff used a deceptive act or practice that rise to the level of a 93A violation, and Kazarian also fails to allege an injury that resulted from Plaintiff's actions.

III.     Conclusion

For the foregoing reasons, Plaintiff's Motion to Dismiss Counterclaim of Defendant, Charles Kazarian [#23] is GRANTED.

IT IS SO ORDERED.

June 2, 2016                                                         /s/ Indira Talwani
                                                                     United States District Judge